## UNITED STATED DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| ERIC TAYLOR | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Case No.: |
| WALTER CHARNOFF, an individual, | ) |
| RENTRANGE, LLC, a Colorado Limited | ) |
| Liability Company, and JOHN DOE, an | ) |
| Individual, | ) |
| | ) |
| Defendants. | ) |

### <u>VERIFIED COMPLAINT</u>

NOW COMES the Plaintiff ERIC TAYLOR, a South Carolina citizen and resident, by and through his attorneys, Mudd Law Offices, and files his Complaint against the Defendants WALTER CHARNOFF ("Defendant Charnoff"), a Colorado citizen and resident; RENTRANGE, LLC ("Defendant RentRange"), a Colorado limited liability company; and JOHN DOE ("Defendant Doe"), an unknown individual, upon personal information as to his own activities, upon information obtained through investigation, and upon information and belief as to the activities of others and all other matters, and states as follows:

### NATURE OF ACTION

1.     This is an action for breach of contract, defamation *per se*, tortious interference with business relations, assault, and battery.

2.     By this action, the Plaintiff seeks compensatory damages, punitive damages, recovery of attorney's fees and costs, and injunctive relief.

### PARTIES

3.     ERIC TAYLOR is a resident of Lexington, South Carolina.

4.      WALTER CHARNOFF is a resident of Boulder County, Colorado.

5.      RENTRANGE, LLC is a Colorado limited liability company with its principal place of business in Westminster, Adams County, Colorado.

6.      JOHN DOE is an unidentified security subcontractor who accompanied Defendant Charnoff on February 13, 2014 and, upon information and belief, is a citizen of Florida.

## JURISDICTION AND VENUE

7.      The Plaintiff is a citizen of South Carolina.  The Defendants are citizens of Colorado and Florida.  Consequently, there exists diversity of the Parties.

8.      An actual case or controversy has arisen between the Plaintiff and the Defendants (the "Parties") in an amount exceeding $75,000.

9.      Based on the diversity of the Parties and the amount in controversy exceeding $75,000, this Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1332.

10.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because at least one of the Defendants is subject to this Court's personal jurisdiction with respect to this action.

11.     The Defendants have engaged in intentional conduct with actual malice that has harmed the Plaintiff.

12.     The Plaintiff has been injured by the Defendants' conduct and has suffered damages resulting therefrom.

## FACTUAL BACKGROUND

### Relationship Between the Parties

13.     Beginning in 2011, the Plaintiff worked for Defendant RentRange as an independent contractor and then later became its company President.

2

14.     Defendant Charnoff is the Chief Executive Officer and Managing Member of Defendant RentRange.

15.     On October 16, 2012, the Plaintiff and Defendant RentRange executed an employment agreement formalizing the terms and conditions of the Plaintiff's employment with Defendant RentRange (the "Employment Agreement").  A true and correct copy of the Employment Agreement is attached hereto as Exhibit A.

16.     Throughout nearly all of the Plaintiff's employment with Defendant RentRange, the Plaintiff and Defendant Charnoff had a positive working relationship.

17.     On or about November 2013, Defendant Charnoff informed the Plaintiff that he would earn a performance bonus of $40,000 if the Plaintiff secured an agreement between RentRange and Freddie Mac.

18.     Toward the end of 2013, the Plaintiff decided to plan his departure from employment with Defendant RentRange.

19.     The Plaintiff discussed his intended departure from Defendant RentRange with Defendant Charnoff.

20.     In their discussions, the Plaintiff and Defendant Charnoff agreed that the Plaintiff's last day of employment with Defendant RentRange would be December 5, 2013.

21.     On or about December 5, 2013, Defendant Charnoff expressed to the Plaintiff that Defendant Charnoff wanted the Plaintiff to extend his employment with Defendant RentRange until a replacement for Plaintiff could be found.

22.     On or about December 5, 2013, the Plaintiff agreed to remain actively employed with RentRange with no material changes to his duties, benefits or compensation plan.

23.     On or about December 5, 2013, Defendant Charnoff reiterated to the Plaintiff the terms of the $40,000 performance bonus.

24.     At some time after December 5, 2013, the Plaintiff provided a separation agreement to Defendant Charnoff detailing his future terms of departure from Defendant RentRange at some point on or before April 1, 2014.

25.     On or before January 1, 2014, the Plaintiff secured the agreement between Defendant RentRange and Freddie Mac.

26.     By securing the agreement between RentRange and Freddie Mac, the Plaintiff became entitled to the performance bonus of $40,000.

27.     However, on or about January 10, 2014, after a RentRange Advisory Board meeting, Defendant Charnoff informed the Plaintiff that no performance bonus would be paid.

28.     The Plaintiff maintained his entitlement to the performance bonus.

29.     Thereafter, throughout January and February 2014, the Plaintiff and Defendant Charnoff discussed the smoothest way for the Plaintiff to cease his employment with Defendant RentRange.

30.     Despite Defendant Charnoff and Defendant RentRange reneging on the terms relating to his performance bonus, the Plaintiff continue to work for the benefit of Defendant RentRange as the Parties discussed the terms of his departure from Defendant RentRange.

**Confrontation in Orlando, Florida**

31.     On February 12, 2014, the Plaintiff and Defendant Charnoff met in Orlando, Florida.  On that date, the Plaintiff and Defendant Charnoff had a pleasant meeting and dinner.

32.    On the evening of February 12, 2014, in compliance with a written request by Defendant Charnoff, the Plaintiff electronically transferred all company-related information and data in his possession to Defendant Charnoff.

33.    The Plaintiff sent electronic notice of the data transfer to Defendant Charnoff and Fred Heigold on the evening of February 12, 2014.

34.    Fred Heigold is an employee of Defendant RentRange and the administrator of its document storage service.

35.    The Plaintiff also provided Defendant Charnoff with verbal notice of the data transfer.

36.    The next morning, at or around 10:40 a.m., Defendant Charnoff and Defendant Doe confronted the Plaintiff in the lobby of the Marriott Courtyard Hotel in Orlando, Florida.

37.    Defendant Charnoff demanded that the Plaintiff relinquish to Defendant Charnoff the laptop computer used by the Plaintiff.

38.    The Plaintiff informed Defendant Charnoff that he did not object to relinquishing the laptop computer to Defendant Charnoff, but needed to remove personal and private information before doing so.

39.    Defendant Charnoff indicated that, if the Plaintiff did not immediately relinquish to Defendant Charnoff the laptop computer, Defendant Charnoff would take it by force from the Plaintiff.

40.    At this point, Defendant Doe made visible to the Plaintiff a holster Defendant Doe wore containing a pistol.

41.    The conduct of Defendant Charnoff and Defendant Doe completely surprised the Plaintiff.

42.     The conduct of Defendant Charnoff and Defendant Doe concerned the Plaintiff.

43.     The Plaintiff again informed Defendant Charnoff that all company-related information had already been electronically transferred from his laptop computer to Defendant Charnoff the evening before.

44.     The Plaintiff explained that he wanted to remove his personal and private information from the laptop computer and would relinquish the laptop computer to Defendant Charnoff after doing so.

45.     Defendant Charnoff then attempted to forcibly take the laptop computer from the Plaintiff.  He did not succeed.

46.     The Plaintiff attempted to leave the hotel lobby and return to his hotel room.

47.     However, Defendant Charnoff and Defendant Doe physically blocked the Plaintiff's path to the hotel elevator that would take the Plaintiff to his hotel room.

48.     At this time, the Plaintiff sought help from the hotel's front desk staff.

49.     The hotel's staff then attempted to escort the Plaintiff to a safe location in a back office.

50.     Defendant Charnoff and Defendant Doe again physically impeded the Plaintiff's path.

51.     At the Plaintiff's request, the hotel staff called the police.

52.     Throughout this encounter, Defendant Charnoff physically contacted and shoved the Plaintiff more than once.

53.     At one point, the Plaintiff asked Defendant Charnoff if the Plaintiff was being terminated from his employment with Defendant RentRange.

54.     Defendant Charnoff refused to directly answer the Plaintiff's question.

55.     The Plaintiff asked Defendant Charnoff several more times if the Plaintiff was being terminated from his employment with Defendant RentRange.

56.     Finally, Defendant Charnoff informed the Plaintiff that the Plaintiff's employment would be "suspended."

57.     This suspension of the Plaintiff's employment would result in the Plaintiff's pay being suspended.

58.     Perceiving this suspension to be a material, adverse change in and to his compensation, the Plaintiff verbally communicated his resignation with good reason to Defendant Charnoff, Defendant RentRange's CEO.

59.     When the police arrived, they diffused the situation and separated Defendant Doe from the Plaintiff and Defendant Charnoff.

60.     The police officers instructed the Plaintiff not to relinquish the laptop computer.

61.     The Plaintiff did not relinquish the laptop computer.

62.     The police then proceeded to discuss the situation with the Plaintiff and Defendant Charnoff.

63.     At the request of a police officer, hotel security officers provided the Plaintiff with a safety escort to his hotel room and then to his vehicle.

64.     Upon safely reaching his vehicle, the Plaintiff immediately drove home to South Carolina.

### The Plaintiff's Compliance with the Employment Agreement

65.     Through February 13, 2014, the Plaintiff complied with the terms of the Employment Agreement.

66.     Since February 13, 2014, the Plaintiff has continued to comply with the terms of the Employment Agreement.

67.     By a letter dated February 14, 2014, the Plaintiff provided Defendant RentRange with written notice of Defendant Charnoff's acts and conduct that led to his resignation with good reason.  By this letter, the Plaintiff reaffirmed his resignation with good reason.  A true and correct copy of this letter is attached hereto as Exhibit B.

**Defendant Charnoff's Statements About the Plaintiff**

68.     On February 23, 2014, the Plaintiff received an email from Jeff Tennyson.

69.     In response to the email, the Plaintiff telephoned and spoke with Jeff Tennyson.

70.     During his phone call with the Plaintiff, the Plaintiff learned that Defendant Charnoff had informed multiple individuals that "[the Plaintiff] was illegally selling data for a profit" (the "Illegal Sales Statement").

71.     Throughout February and March 2014, Defendant Charnoff published and repeated the Illegal Sales Statement to multiple third parties.

72.     The Illegal Sales Statement is false.

73.     The Illegal Sales Statement falsely conveys the meaning that the Plaintiff would illegally sell his company's private information for a profit.

74.     The Illegal Sales Statement falsely conveys the meaning that the Plaintiff lacks integrity.

75.     The Illegal Sales Statement falsely conveys the meaning that the Plaintiff committed the crime of theft.

76.     The Illegal Sales Statement falsely conveys the meaning that the Plaintiff participated in activities that are incompatible with his trade or profession.

8

77.     The Plaintiff also learned that Defendant Charnoff had informed multiple individuals that the Plaintiff had been "escorted out [of the Orlando hotel] by police" (the "Arrested Statement").

78.     The Arrested Statement is false.

79.     The Arrested Statement falsely conveys the meaning that the Plaintiff engaged in criminal behavior and that law enforcement officers detained the Plaintiff as a result of criminal behavior.

80.     The Arrested Statement falsely conveys the meaning that the Plaintiff committed a crime.

81.     The Arrested Statement falsely conveys the meaning that the Plaintiff participated in activities that are incompatible with his trade or profession.

82.     The Arrested Statement and the Illegal Sales Statement (collectively, the "False and Defamatory Statements") identify the Plaintiff by name.

83.     Defendant Charnoff presented the False and Defamatory Statements as fact.

84.     Each repeated publication of the False and Defamatory Statements by Defendant Charnoff is a false and defamatory statement of fact.

85.     Persons other than the Plaintiff and Defendant Charnoff would have and actually have reasonably understood that the False and Defamatory Statements related to and were about the Plaintiff.

86.     The False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Defendant Charnoff to third parties.

87.     Defendant Charnoff made the False and Defamatory Statements with actual malice knowing the falsity of the statements.

88.     If Defendant Charnoff did not act with actual malice, he acted with reckless or negligent disregard for the falsity of the False and Defamatory Statements to the detriment of the Plaintiff.

### The Harm Suffered By Plaintiff

89.     The Defendants acted with intent and actual malice in that they intended to harm the Plaintiff.

90.     The foregoing wrongful conduct (the "Wrongful Conduct") on the part of the Defendants has caused the Plaintiff to suffer harm.

91.     As a result of the Defendants' Wrongful Conduct, the Plaintiff has suffered damages.

92.     The Defendants' Wrongful Conduct has caused the Plaintiff to suffer harms not yet fully realized.

## COUNT ONE
## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
## AGAINST DEFENDANT RENTRANGE, LLC

93.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above in this First Count as though fully set forth herein.

94.     The Plaintiff and Defendant RentRange entered into the Employment Agreement. See Ex. A.

95.     The Plaintiff performed all of his obligations under the Employment Agreement.

96.     Defendant RentRange failed to perform all of its obligations under the Employment Agreement.

97.     Defendant RentRange offered the Plaintiff a specific performance bonus of $40,000.00 pursuant to Section 3(d) of the Employment Agreement should the Plaintiff secure an agreement with Freddie Mac.

98.     The Plaintiff accepted this offer.

99.     The Plaintiff secured the agreement with Freddie Mac.

100.     By securing the agreement with Freddie Mac, the Plaintiff became entitled to the performance bonus.

101.     Despite the Plaintiff's repeated requests for the performance bonus, Defendant RentRange failed to compensate the Plaintiff for the performance bonus in breach of Section 3 of the Employment Agreement.

102.     This breach of the Employment Agreement has proximately caused the Plaintiff to suffer damages in the amount of $40,000.00.

103.     Defendant RentRange caused a material, adverse reduction in the Plaintiff's

compensation by suspending him.

104.     Section 5(c)(i) of the Employment Agreement permits resignation with Good

Reason where a material, adverse reduction in the Plaintiff's compensation occurs.

105.     The Plaintiff resigned with Good Reason as permitted by Section 5(c)(i) of the

Employment Agreement due to a material adverse reduction in the Plaintiff's compensation as

defined by Section 5(d)(ii) of the Employment Agreement.

106.     The Plaintiff informed Defendant Charnoff and Defendant RentRange of his

resignation with Good Reason.

107.     Additionally, the Plaintiff has satisfied and has remained willing to satisfy each

and every condition precedent to the payment of severance payments and/or benefits as required

by Section 5(c)(ii) of the Employment Agreement.

108.     The Plaintiff has provided the Defendant with written notice of the acts that

constituted the grounds for his resignation with good reason.

109.     The Plaintiff delivered a separation agreement to the Defendant.

110.     The Plaintiff offered to provide the Defendant with transition assistance after his

separation.

111.     The Plaintiff has continued to comply with the Employment Agreement

throughout his dispute with Defendant RentRange.

112.     Despite the foregoing, and despite repeated requests to do so, Defendant

RentRange has failed to deliver to the Plaintiff the compensation due to him pursuant to Sections

5(c)(i)(a)(1)-(4) of the Employment Agreement.

113.     By failing to deliver to the Plaintiff the compensation due to him pursuant to

Sections 5(c)(i)(a)(1)-(4) of the Employment Agreement, Defendant RentRange has breached the

Employment Agreement.

114.    Specifically, Defendant RentRange has failed to provide the Plaintiff with continuing severance pay as required under the Employment Agreement in an amount of $150,000.00 in violation of Section 5(c)(i)(a)(2).

115.    Specifically, Defendant RentRange has failed to reimburse the Plaintiff for expenses for which he is entitled to be reimbursed in the amount of $7,253.59 in violation of Sections 5(c)(i)(a)(3) and Section 8 of the Employment Agreement.

116.    By failing to deliver to the Plaintiff the deferred compensation due him pursuant to the addendums to the Employment Agreement, Defendant RentRange has failed to provide the Plaintiff with deferred compensation in the amount of $37,500 in violation of the addendums to the Employment Agreement.

117.    As a direct and proximate result of Defendant RentRange's failure to perform its obligations under and breach of the Employment Agreement, the Plaintiff has suffered damages.

118.    Defendant RentRange's failure to perform its obligations under and breach of the Employment Agreement has caused the Plaintiff to suffer damages in an amount in excess of $230,000.00.

119.    WHEREFORE, the Plaintiff seeks from Defendant RentRange recovery of damages resulting from the Defendant's breach of the Employment Agreement.

120.    WHEREFORE, the Plaintiff seeks from Defendant RentRange recovery of his reasonable attorney fees as provided for by Section 11 of the Employment Agreement.

**COUNT TWO**

**AS AND FOR A SECOND CAUSE OF ACTION**

**DEFAMATION *PER SE***

**AGAINST DEFENDANT WALTER CHARNOFF**

121.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above in this Second Count as though fully set forth herein.

122.    Throughout February and March 2014, Defendant Charnoff published and repeated the Arrested Statement to multiple third parties.

123.    The Arrested Statement is false.

124.    The Arrested Statement falsely conveys the meaning that law enforcement officers detained the Plaintiff as a result of criminal behavior by the Plaintiff.

125.    The Arrested Statement falsely conveys the meaning that the Plaintiff had committed a crime.

126.    The Arrested Statement falsely conveys the meaning that the Plaintiff participated in activities that are incompatible with his trade or profession.

127.    Throughout February and March 2014, Defendant Charnoff published and repeated the Illegal Sales Statement to multiple third parties.

128.    The Illegal Sales Statement is false.

129.    The Illegal Sales Statement falsely conveys the meaning that the Plaintiff would illegally sell his company's private information for a profit.

130.    The Illegal Sales Statement falsely conveys the meaning that the Plaintiff lacks integrity.

131.    The Illegal Sales Statement falsely conveys the meaning that the Plaintiff committed the crime of theft.

14

132.     The Illegal Sales Statement falsely conveys the meaning that the Plaintiff participated in activities that are incompatible with his trade or profession.

133.     Defendant Charnoff presented the False and Defamatory Statements as fact.

134.     Each repeated publication of the False and Defamatory Statements by Defendant Charnoff is a separate false and defamatory statement of fact.

135.     The False and Defamatory Statements identify the Plaintiff by name.

136.     Persons other than the Plaintiff and the Defendant would have and actually have reasonably understood that the False and Defamatory Statements related to and were about the Plaintiff.

137.     The False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Defendant Charnoff to third parties.

138.     Defendant Charnoff made the False and Defamatory Statements with actual malice knowing the falsity of the statements.

139.     If Defendant Charnoff did not act with actual malice, he acted with reckless or negligent disregard for the falsity of the False and Defamatory Statements to the detriment of the Plaintiff.

140.     As a result of Defendant Charnoff's conduct and the publication of the False and Defamatory Statements, the Plaintiff has suffered and continues to suffer damages including, but not limited to, harmed reputation and embarrassment.

141.     WHEREFORE, the Plaintiff seeks from Defendant Charnoff recovery of compensatory and punitive damages arising from Defendant Walter Charnoff's *per se* defamation of him.

**COUNT THREE**

**AS AND FOR A THIRD CAUSE OF ACTION**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

**AGAINST DEFENDANT WALTER CHARNOFF**

142.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 and 121 through 140 above in this Third Count as though fully set forth herein.

143.    The Plaintiff held a reasonable expectancy of entering into a valid business relationship with B2R Finance.

144.    Defendant Charnoff had knowledge of the Plaintiff's expectancy of entering into a valid business relationship with B2R Finance.

145.    Defendant Charnoff published the False and Defamatory Statements to B2R Finance to harm the Plaintiff.

146.    Defendant Charnoff expressly intended to direct B2R Finance away from doing business with the Plaintiff through publication of the False and Defamatory Statements.

147.    Defendant Charnoff made the False and Defamatory Statements with the specific intent that B2R Finance would not choose the Plaintiff's services.

148.    The publication of the False and Defamatory Statements constitutes an intentional and unjustifiable interference with prospective business relations of the Plaintiff.

149.    The publication of the False and Defamatory Statements caused B2R Finance to refrain from contacting and/or doing business with the Plaintiff.

150.    As a result of Defendant Charnoff's conduct and the publication of the False and Defamatory Statements to B2R Finance, the Plaintiff has suffered and continues to suffer damages including, but not limited to, loss of prospective business from B2R Finance and additional lost business.

16

151.     WHEREFORE, the Plaintiff seeks from Defendant Charnoff:

    a.  recovery of compensatory damages arising from Defendant Charnoff's tortious interference with his prospective business relations;

    b.  recovery of punitive damages arising from Defendant Charnoff's tortious interference with his prospective business relations;

    c.  injunctive relief in the form of an order enjoining Defendant Charnoff from engaging in any conduct designed to interfere with the Plaintiff's business relations; and,

    d.  injunctive relief in the form of an order compelling Defendant Charnoff to engage in any conduct necessary to effectuate the foregoing relief.

**COUNT FOUR**

**AS AND FOR A FOURTH CAUSE OF ACTION**

**ASSAULT**

**AGAINST DEFENDANTS WALTER CHARNOFF AND JOHN DOE**

152.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above in this Fourth Count as though fully set forth herein.

153.     On February 13, 2014 at or around 10:40 a.m., Defendant Charnoff and Defendant Doe confronted the Plaintiff in the lobby of the Marriott Courtyard Hotel in Orlando, Florida.

154.     Defendant Charnoff demanded that the Plaintiff relinquish the laptop computer he used to Defendant Charnoff.

155.     Defendant Charnoff indicated that, if the Plaintiff did not give Defendant Charnoff the laptop computer at once, Defendant Charnoff and Defendant Doe would take it by force.

17

156.    In doing so, Defendant Charnoff indicated his intent to make harmful contact with the Plaintiff.

157.    In doing so, Defendant Charnoff also indicated his intent to put the Plaintiff in the apprehension of imminent harmful contact by Defendant Charnoff.

158.    The Plaintiff did fear imminent harmful contact by Defendant Charnoff.

159.    At this point, Defendant Doe made visible to the Plaintiff his holster containing a pistol.

160.    In doing so, Defendant Doe indicated his intent to make harmful contact with the Plaintiff.

161.    In doing so, Defendant Doe also indicated his intent to put the Plaintiff in the apprehension of imminent harmful contact by Defendant Doe.

162.    The Plaintiff did fear imminent harmful contact by Defendant Doe.

163.    Defendant Charnoff attempted to forcibly take the laptop computer from the Plaintiff.

164.    The Plaintiff attempted to leave the lobby and return to his hotel room.

165.    However, Defendant Charnoff and Defendant Doe physically impeded the Plaintiff's path.

166.    Again, Defendants Charnoff and Doe placed the Plaintiff in fear of imminent harmful contact.

167.    At this time, the Plaintiff sought help from the hotel's front desk staff who then attempted to escort him to a safe back office.

168.    Defendant Charnoff and Defendant Doe again physically impeded the Plaintiff's path.

169.     Again, Defendants Charnoff and Doe placed the Plaintiff in fear of imminent harmful contact.

170.     Defendant Charnoff intended to make contact with the Plaintiff.

171.     Defendant Charnoff intended to make harmful and offensive contact with the Plaintiff.

172.     Defendant Charnoff intended to place the Plaintiff in the apprehension of immediate harmful contact.

173.     The Plaintiff did fear imminent harmful contact from Defendant Charnoff.

174.     Defendant Doe intended to make contact with the Plaintiff

175.     Defendant Doe intended to make harmful and offensive contact with the Plaintiff

176.     Defendant Doe intended to place the Plaintiff in the apprehension of imminent harmful contact.

177.     The Plaintiff did fear imminent harmful contact from Defendant Doe.

178.     WHEREFORE, the Plaintiff seeks from Defendant Charnoff and Defendant Doe compensatory and punitive damages for their assault upon him.

<u>COUNT FIVE</u>
<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>
<u>BATTERY</u>
<u>AGAINST DEFENDANT WALTER CHARNOFF</u>

179.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 and 153 through 177 above in this Fifth Count as though fully set forth herein.

180.     On February 13, 2014 at or around 10:40 a.m., Defendant Charnoff and Defendant Doe confronted the Plaintiff in the lobby of the Marriott Courtyard Hotel in Orlando, Florida.

181.    This began an encounter described in Paragraphs 153 through 177 of this Complaint which are hereby realleged.

182.    During this encounter, Defendant Charnoff physically contacted and shoved the Plaintiff more than once.

183.    Defendant Charnoff intended to make contact with the Plaintiff

184.    Defendant Charnoff intended to make harmful and offensive contact with the Plaintiff.

185.    Defendant Charnoff did make harmful and offensive contact with the Plaintiff.

186.    WHEREFORE, the Plaintiff seeks from Defendant Charnoff compensatory and punitive damages for Defendant Charnoff's battery of the Plaintiff.

## GENERAL

187.    Where conditions precedent are alleged, the Plaintiff avers that all conditions precedent have been performed or have occurred.

188.    The Plaintiff demands a jury trial.

## **REQUEST FOR RELIEF**

WHEREFORE, PLAINTIFF ERIC TAYLOR accordingly and respectfully seeks a

judgment against DEFENDANTS RENTRANGE, LLC, WALTER CHARNOFF, and JOHN

DOE as follows:

a.   That the PLAINTIFF be awarded compensatory damages in an amount to be

determined at trial;

b.   That the PLAINTIFF be awarded punitive damages in an amount to be determined at

trial;

c.   That the PLAINTIFF be awarded the injunctive relief sought;

d.   That the PLAINTIFF be awarded his reasonable attorney's fees and costs; and,

e.   That the PLAINTIFF be awarded any such other and further relief as this Court may

deem just and proper or to which he may be entitled as a matter of law or equity.


Dated: Chicago, Illinois          PLAINTIFF,
       May 1, 2014          ERIC TAYLOR


                     _/s/ Charles Lee Mudd Jr._____
                    By:  One of His Attorneys
                        Charles Lee Mudd Jr.
                        Mudd Law Offices
                        3114 West Irving Park Road, Suite 1W
                        Chicago, Illinois  60618
                        773.588.5410 Telephone
                        773.588.5440 Facsimile
                        Illinois ARDC: 6257957
                        clm@muddlaw.com

## UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ERIC TAYLOR | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|       v. | ) |
| | ) |
| WALTER CHARNOFF, an individual, | ) |
| RENTRANGE, LLC, a Colorado Limited | ) |
| Liability Company, and JOHN DOE, an | ) |
| Individual, | ) |
| | ) |
|     Defendants. | ) |

STATE OF _Maryland_   )
                      )    SS:
COUNTY OF _Montgomery_   )

**ERIC TAYLOR, being first duly sworn, deposes and states as follows:**

That deponent is a Plaintiff; that deponent has read the foregoing Verified Complaint and

knows the contents thereof; that the same is true to the deponent's own knowledge, except as to

those matters therein stated to be alleged upon information and belief, and as to those matters

deponent believes them to be true.  The basis of said belief arises from deponent's familarity

with the facts related thereto.

_Eric Taylor_
Eric Taylor

Sworn to before me this

_1st_ day of May 2014.

_Annamma Yogiaveetil_
NOTARY PUBLIC

```
ANNAMMA YOGIAVEETIL
Notary Public
Montgomery County
Maryland
My Commission Expires May 29, 2017
```