IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:14-CV-01251-REB-MJW

**ERIC TAYLOR**,

      Plaintiff,

v.

**WALTER CHARNOFF, an individual, RENTRANGE, LLC, a Colorado limited liability company, and John Doe, an individual,**

      Defendants.

---

### DEFENDANT WALTER CHARNOFF AND RENTRANGE, LLC'S ANSWER AND COUNTERCLAIMS

---

Defendants, Walter Charnoff and RentRange, LLC ("RentRange") (collectively "Defendants"), by and through their counsel, **MOYE WHITE LLP**, submit the following Answer and Counterclaims.

### <u>INTRODUCTION</u>

Plaintiff, Eric Taylor, the former President of RentRange, engaged in a pattern of disloyal conduct calculated to divert business opportunities from RentRange for his own personal gain.  While receiving a quarter million dollars in salary, Taylor improperly used his access to RentRange's confidential and proprietary information for his personal benefit and the benefit of RentRange's competitors.   In planning his exit from RentRange, Plaintiff attempted to mask his illicit conduct by deleting thousands of files and data containing confidential company information and communications with other companies because he knew that it illustrated his disloyalty to RentRange.   After RentRange demanded the return of its property and information, Taylor terminated his

employment relationship with RentRange and initiated this litigation in an effort to divert the attention away from his wrongdoing by claiming, now, that compensation is due to him.   Taylor's claims for compensation are baseless because he failed to honor the obligations imposed by his employment agreement with RentRange.   In this case, RentRange seeks to hold Taylor accountable for failing to honor his employment agreement and usurping RentRange's business opportunities for his own benefit.

## NATURE OF ACTION

1.      This paragraph contains Plaintiff's characterization of events to which no response is required, but insofar as a response is required, Defendants deny.

2.      This paragraph contains Plaintiff's request for damages and other relief to which no response is required, but insofar as a response is required, Defendants deny.

## PARTIES

3.      Defendants admit the allegations contained in paragraph 3 of Plaintiff's Verified Complaint ("Complaint").

4.      Defendants admit the allegations contained in paragraph 4 of the Complaint.

5.      Defendants admit the allegations contained in paragraph 5 of the Complaint.

6.      Defendants affirmatively allege that Daniel Cook, a professional security guard, accompanied Mr. Charnoff on February 13, 2014. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6 of the Complaint and therefore, deny.

## JURISDICTION AND VENUE

7.      Defendants admit the allegations contained in paragraph 7 of the Complaint.

8.      Defendants admit the allegations contained in paragraph 8 of the Complaint.

9.      Defendants admit the allegations contained in paragraph 9 of the Complaint.

10.     Defendants admit the allegations contained in paragraph 10 of the Complaint.

11.     Defendants deny the allegations contained in paragraph 11 of the Complaint.

12.     Defendants deny the allegations contained in paragraph 12 of the Complaint.

## FACTUAL BACKGROUND

### Response Regarding "Relationship Between the Parties"

13.     Defendants admit the allegations contained in paragraph 13 of the Complaint.

14.     Defendants admit the allegations in paragraph 14 of the Complaint.

15.     Defendants affirmatively allege that the Agreement attached as Exhibit A to the Complaint was executed on March 29, 2013 and back-dated to October 16, 2012. Defendants, therefore, deny the remaining allegations in paragraph 15 of the Complaint.

16.     Defendants deny the allegations in paragraph 16 of the Complaint.

17.     Defendants deny the allegations in paragraph 17 of the Complaint.

3

18.     Defendants deny the allegations in paragraph 18 of the Complaint.

19.     Defendants deny the allegations in paragraph 19 of the Complaint.

20.     Defendants deny the allegations in paragraph 20 of the Complaint.

21.     Defendants deny the allegations contained in paragraph 21 of the Complaint.

22.     Defendants admit Taylor agreed to continue his relationship with RentRange but deny the remaining allegations in paragraph 22 of the Complaint.

23.     Defendants deny the allegations contained in paragraph 23 of the Complaint.

24.     Defendants admit that the parties discussed terms to be included in a future separation agreement but deny the remaining allegations in paragraph 24 of the Complaint.

25.     Defendants deny the allegations in paragraph 25 of the Complaint.

26.     Defendants deny the allegations in paragraph 26 of the Complaint.

27.     On or about January 10, 2014, Taylor asked Mr. Charnoff about a purported bonus related to Freddie Mac, and Mr. Charnoff reminded Taylor that no such bonus was due as the matter was resolved pursuant to a prior agreement of the parties. Defendants deny the remaining allegations contained in paragraph 27 of the Complaint.

28.     Defendants deny that any bonus was due and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28 of the Complaint and therefore, deny.

29.     On February 9, 2014, the parties discussed certain separation terms pending RentRange member approval. Defendants are without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 29 of the Complaint and therefore, deny.

30.     Defendants deny the allegations contained in paragraph 30 of the Complaint.

### Response Regarding "Confrontation in Orlando, Florida"

31.     Defendants admit that Mr. Charnoff met with Plaintiff in Orlando, Florida on February 12, 2014.   Defendants deny the remaining allegations contained in paragraph 31 of the Complaint.

32.     Defendants deny the allegations contained in paragraph 32 of the Complaint.

33.     Defendants deny the allegations contained in paragraph 33 of the Complaint.

34.     Defendants admit the allegations contained in paragraph 34 the Complaint.

35.     Defendants deny the allegations contained in paragraph 35 of the Complaint.

36.     Defendants admit that the parties met in the lobby of the Marriott Courtyard Hotel in Orlando, Florida on the morning of February 13, 2014. Defendants deny the remaining allegations contained in paragraph 36 of the Complaint.

37.     Mr. Charnoff requested that Taylor submit his laptop for back-up in accordance with RentRange's employee handbook.   Defendants deny the remaining allegations contained in paragraph 37 of the Complaint.

38.     Defendants admit that Taylor asked that he be permitted to remove

personal items from the laptop, Defendants deny the remaining allegations contained in paragraph 38 of the Complaint.

39.    Defendants deny the allegations contained in paragraph 39 of the Complaint.

40.    Defendants deny the allegations contained in paragraph 40 of the Complaint.

41.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint and therefore, deny.

42.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint and therefore, deny.

43.    Defendants deny the allegations contained in paragraph 43 of the Complaint.

44.    Taylor expressed that the laptop contained personal information. Defendants deny the remaining allegations in paragraph 44 of the Complaint.

45.    Defendants deny the allegations contained in paragraph 45 of the Complaint.

46.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint and therefore, deny.

47.    Defendants deny the allegations contained in paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in paragraph 48 of the Complaint.

49.     Defendants deny the allegations contained in paragraph 49 of the Complaint.

50.     Defendants deny the allegations contained in paragraph 50 of the Complaint.

51.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint and therefore, deny.

52.     Defendants deny the allegations contained in paragraph 52 of the Complaint.

53.     Defendants admit the allegations contained in paragraph 53 of the Complaint.

54.     Defendants deny the allegations contained in paragraph 54 of the Complaint.

55.     Defendants deny the allegations contained in paragraph 55 of the Complaint.

56.     Defendants deny the allegations contained in paragraph 56 of the Complaint.

57.     Defendants deny the allegations contained in paragraph 57 of the Complaint.

58.     Defendants deny the allegations contained in paragraph 58 of the Complaint.

59.     Defendants admit that police arrived at the hotel but deny the remaining allegations contained in paragraph 59 of the Complaint.

60.     Defendants deny the allegations contained in paragraph 60 of the Complaint.

61.     Defendants admit the allegations contained in paragraph 61 of the Complaint.

62.     Defendants admit the allegations contained in paragraph 62 of the Complaint.

63.     Defendants deny the allegations contained in paragraph 63 of the Complaint.

64.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64 the Complaint and therefore, deny.

**Response Regarding "Plaintiff's Compliance with the Employment Agreement"**

65.     Defendants deny the allegations contained in paragraph 65 of the Complaint.

66.     Defendants deny the allegations contained in paragraph 66 of the Complaint.

67.     Defendants admit receiving the letter attached as Exhibit B to the Complaint from Taylor.   Defendants deny the remaining allegations contained in paragraph 67 of the Complaint.

**Response Regarding "Defendant Charnoff's Statements About the Plaintiff"**

68.     Defendants are without knowledge or information sufficient to form a belief

8

as to the truth of the allegations contained in paragraph 68 of the Complaint and therefore, deny.

69.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Complaint and therefore, deny.

70.     Defendants deny making the statements attributed to Mr. Charnoff. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70 of the Complaint and therefore, deny.

71.     Defendants deny the allegations contained in paragraph 71 of the Complaint.

72.     Defendants deny making any "Illegal Sales Statement" and deny the remaining allegations contained in paragraph 72 of the Complaint.

73.     Defendants deny making any "Illegal Sales Statement" and deny the remaining allegations contained in paragraph 73 of the Complaint.

74.     Defendants deny making any "Illegal Sales Statement" and deny the remaining allegations contained in paragraph 74 of the Complaint.

75.     Defendants deny making any "Illegal Sales Statement" and deny the remaining allegations contained in paragraph 75 of the Complaint.

76.     Defendants deny making any "Illegal Sales Statement" and deny the remaining allegations contained in paragraph 76 of the Complaint.

77.     Defendants deny the allegations contained in paragraph 77 of the Complaint.

78.     Defendants deny making the Arrested Statement and deny the remaining allegations contained in paragraph 78 of the Complaint.

79.     Defendants deny making the Arrested Statement and deny the remaining allegations contained in paragraph 79 of the Complaint.

80.     Defendants deny making the Arrested Statement and deny the remaining allegations contained in paragraph 80 of the Complaint.

81.     Defendants deny making the Arrested Statement and deny the remaining allegations contained in paragraph 81 of the Complaint.

82.     Defendants deny making the Arrested Statement and deny the remaining allegations contained in paragraph 82 of the Complaint.

83.     Defendants deny the allegations contained in paragraph 83 of the Complaint.

84.     Defendants deny the allegations contained in paragraph 84 of the Complaint.

85.     Defendants deny the allegations contained in paragraph 85 of the Complaint.

86.     Defendants deny the allegations contained in paragraph 86 of the Complaint.

87.     Defendants deny the allegations contained in paragraph 87 of the Complaint.

88.     Defendants deny the allegations contained in paragraph 88 of the Complaint.

**Response Regarding "Harm Suffered by Plaintiff"**

89.     Defendants deny the allegations contained in paragraph 89 of the Complaint.

90.     Defendants deny the allegations contained in paragraph 90 of the Complaint.

91.     Defendants deny the allegations contained in paragraph 91 of the Complaint.

92.     Defendants deny the allegations contained in paragraph 92 of the Complaint.

<u>COUNT I</u>

**(Breach of Contract – Against RentRange)**

93.     Defendants incorporate all previous paragraphs.

94.     Defendants admit entering the agreement attached as Exhibit A to the Complaint.

95.     Defendants deny the allegations contained in paragraph 95 of the Complaint.

96.     Defendants deny the allegations contained in paragraph 96 of the Complaint.

97.     Defendants deny the allegations contained in paragraph 97 of the Complaint.

98.     Defendants deny the allegations contained in paragraph 98 of the Complaint.

99.     Defendants admit that Taylor secured an agreement with Freddie Mac;

however, Defendants deny that Taylor was entitled to any bonus as a result and therefore deny the remaining allegations contained in paragraph 99 of the Complaint.

100.    Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.    Defendants deny the allegations contained in paragraph 101 of the Complaint.

102.    Defendants deny the allegations contained in paragraph 102 of the Complaint.

103.    Defendants deny the allegations contained in paragraph 103 of the Complaint.

104.    Defendants affirmatively allege that the document referenced in paragraph 104 of the Complaint speaks for itself and deny any allegations inconsistent with the same.  Defendants deny the remaining allegations contained in paragraph 104 of the Complaint.

105.    Defendants deny the allegations contained in paragraph 105 of the Complaint.

106.    Defendants deny the allegations contained in paragraph 106 of the Complaint.

107.    Defendants deny the allegations contained in paragraph 107 of the Complaint.

108.    Defendants deny the allegations contained in paragraph 108 of the Complaint.

109.    Defendants deny the allegations contained in paragraph 109 of the

Complaint.

110.   Defendants deny the allegations contained in paragraph 110 of the Complaint.

111.   Defendants deny the allegations contained in paragraph 111 of the Complaint.

112.   Defendants deny the allegations contained in paragraph 112 of the Complaint.

113.   Defendants deny the allegations contained in paragraph 113 of the Complaint.

114.   Defendants deny the allegations contained in paragraph 114 of the Complaint.

115.   Defendants deny the allegations contained in paragraph 115 of the Complaint.

116.   Defendants deny the allegations contained in paragraph 116 of the Complaint.

117.   Defendants deny the allegations contained in paragraph 117 of the Complaint.

118.   Defendants deny the allegations contained in paragraph 118 of the Complaint.

119.   Paragraph 119 contains Taylor's request for damages to which no response is required.   To the extent a response is required, Defendants deny that Taylor is entitled to damages.

120.   Paragraph 120 is Taylor's request for an award of attorneys' fees to which

no response is required.  To the extent a response is required, Defendants deny Taylor is entitled to attorneys' fees.

## **COUNT II**

### **(Defamation *Per Se* – Against Defendant Walter Charnoff)**

121.    Defendants incorporate all previous paragraphs.

122.    Defendants deny the allegations contained in paragraph 122 of the Complaint.

123.    Defendants deny the allegations contained in paragraph 123 of the Complaint.

124.    Defendants deny the allegations contained in paragraph 124 of the Complaint.

125.    Defendants deny the allegations contained in paragraph 125 of the Complaint.

126.    Defendants deny the allegations contained in paragraph 126 of the Complaint.

127.    Defendants deny the allegations contained in paragraph 127 of the Complaint.

128.    Defendants deny the allegations contained in paragraph 128 of the Complaint.

129.    Defendants deny the allegations contained in paragraph 129 of the Complaint.

130.    Defendants deny the allegations contained in paragraph 130 of the Complaint.

131.    Defendants deny the allegations contained in paragraph 131 of the Complaint.

132.    Defendants deny the allegations contained in paragraph 132 of the Complaint.

133.    Defendants deny the allegations contained in paragraph 133 of the Complaint.

134.    Defendants deny the allegations contained in paragraph 134 of the Complaint.

135.    Defendants deny the allegations contained in paragraph 135 of the Complaint.

136.    Defendants deny the allegations contained in paragraph 136 of the Complaint.

137.    Defendants deny the allegations contained in paragraph 137 of the Complaint.

138.    Defendants deny the allegations contained in paragraph 138 of the Complaint.

139.    Defendants deny the allegations contained in paragraph 139 of the Complaint.

140.    Defendants deny the allegations contained in paragraph 140 of the Complaint.

141.    Paragraph 141 contains Taylor's request for relief to which no response is required.  To the extent a response is required, Defendants deny Taylor is entitled to compensatory or punitive damages and affirmatively allege that Taylor's request for

punitive damages is premature, improper and should be stricken.

## COUNT III

### (Tortious Interference with Prospective Business Relations – Against Defendant Walter Charnoff)

142.    Defendants incorporate all previous paragraphs.

143.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 143 of the Complaint and therefore, deny.

144.    Defendants deny the allegations contained in paragraph 144 of the Complaint.

145.    Defendants deny the allegations contained in paragraph 145 of the Complaint.

146.    Defendants deny the allegations contained in paragraph 146 of the Complaint.

147.    Defendants deny the allegations contained in paragraph 147 of the Complaint.

148.    Defendants deny the allegations contained in paragraph 148 of the Complaint.

149.    Defendants deny the allegations contained in paragraph 149 of the Complaint.

150.    Defendants deny the allegations contained in paragraph 150 of the Complaint.

151.    Paragraph 151 states Plaintiff's request for relief to which no response is

required.  To the extent a response is required, Defendants deny Plaintiff is entitled to damages or the relief described in paragraphs 151a-d.

## COUNT IV

### (Assault – Against Defendants Walter Charnoff and John Doe)

152.    Defendants incorporate all previous paragraphs.

153.    Defendants admit that on the morning of February 13, 2014, Mr. Charnoff met Plaintiff in the lobby of the Marriott Courtyard Hotel in Orlando, Florida.  Defendants deny the remaining allegations in paragraph 153 of the Complaint.

154.    Defendants admit that on February 13, 2014, Mr. Charnoff requested the return of information from a laptop in Taylor's possession.  Defendants deny the remaining allegations contained in paragraph 154 of the Complaint.

155.    Defendants deny the allegations in paragraph 155 of the Complaint.

156.    Defendants deny the allegations contained in paragraph 156 of the Complaint.

157.    Defendants deny the allegations contained in paragraph 157 of the Complaint.

158.    Defendants deny the allegations contained in paragraph 158 of the Complaint.

159.    Defendants deny the allegations contained in paragraph 159 of the Complaint.

160.    Defendants deny the allegations contained in paragraph 160 of the Complaint.

161.    Defendants deny the allegations contained in paragraph 161 of the

Complaint.

162.    Defendants deny the allegations contained in paragraph 162 of the Complaint.

163.    Defendants deny the allegations contained in paragraph 163 of the Complaint.

164.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 164 of the Complaint and therefore, deny.

165.    Defendants deny the allegations contained in paragraph 165 of the Complaint.

166.    Defendants deny the allegations contained in paragraph 166 of the Complaint.

167.    Defendants deny the allegations contained in paragraph 167 of the Complaint.

168.    Defendants deny the allegations contained in paragraph 168 of the Complaint.

169.    Defendants deny the allegations contained in paragraph 169 of the Complaint.

170.    Defendants deny the allegations contained in paragraph 170 of the Complaint.

171.    Defendants deny the allegations contained in paragraph 171 of the Complaint.

172.    Defendants deny the allegations contained in paragraph 172 of the

Complaint.

173.   Defendants deny the allegations contained in paragraph 173 of the Complaint.

174.   Defendants deny the allegations contained in paragraph 174 of the Complaint.

175.   Defendants deny the allegations contained in paragraph 175 of the Complaint.

176.   Defendants deny the allegations contained in paragraph 176 of the Complaint.

177.   Defendants deny the allegations contained in paragraph 177 of the Complaint.

178.   Paragraph 178 states Taylor's request for relief to which no response is required.  To the extent a response is required, Defendants deny Taylor is entitled to compensatory or punitive damages or that there was any assault and affirmatively allege that Taylor's request for punitive damages is premature, improper and should be stricken.

### COUNT V

### (Battery – Against Defendant Walter Charnoff)

179.   Defendants incorporate all previous paragraphs.

180.   Defendants admit that on the morning of February 13, 2014, Mr. Charnoff met Taylor in the lobby of the Marriott Courtyard Hotel in Orlando, Florida.  Defendants deny the remaining allegations in paragraph 180 of the Complaint.

181.   Defendants  reincorporate  their  denials  of  the  allegations  contained  in

paragraphs 153-177 of the Complaint.  To the extent a further response is required, Defendants deny any remaining allegations in paragraph 181 of the Complaint.

182.    Defendants deny the allegations contained in paragraph 182 of the Complaint.

183.    Defendants deny the allegations contained in paragraph 183 of the Complaint.

184.    Defendants deny the allegations contained in paragraph 184 of the Complaint.

185.    Defendants deny the allegations contained in paragraph 185 of the Complaint.

186.    Paragraph 186 states Taylor's request for relief to which no response is required.  To the extent a response is required, Defendants deny Taylor is entitled to compensatory or punitive damages or that a battery occurred and affirmatively allege that Taylor's request for punitive damages is premature, improper and should be stricken.

### General

187.    Defendant denies the allegations contained in paragraph 187 of the Complaint.

188.    Paragraph 188 contains Taylor's request for a jury trial to which no response is required by Defendant.

### GENERAL DENIAL

Defendant denies each of the allegations contained in the Complaint unless specifically admitted herein.

20

## **AFFIRMATIVE DEFENSES**

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      Taylor's claims are barred by payment.

3.      Taylor's claims are barred by his own prior breach of contract and bad conduct.

4.      Taylor's claims are barred by Taylor's voluntarily termination of the parties' agreements and by the language of the contract.

5.      Taylor's claims are barred by the doctrine of estoppel, waiver and/or release.

6.      Taylor's claims are barred by the doctrine of acquiescence.

7.      Taylor's claims are barred by the statute of frauds.

8.      The Complaint does not present a justiciable case or controversy.

9.      Taylor's claims are barred by the doctrine of in pari delicto and/or unclean hands.

10.      Taylor's claim for punitive damages is limited by the due process clause of the U.S. Constitution and Article 2 Section 25 of the Colorado Constitution and by the absence of any statutory authority for the recovery of such damages.  Taylor's claim is also premature and should be stricken under C.R.S. §13-21-102.

11.      Taylor's assault and battery claims are barred because there was no "touching," no credible threat and/or because of self-defense.

12.      Taylor's breach of contract claim is barred because he failed to satisfy conditions precedent.

13.     Taylor's defamation claim is barred by the doctrine of privilege and/or truth.

14.     Defendants reserve the right to amend this Answer, and supplement these affirmative defenses upon the discovery of additional facts.

## COUNTER CLAIMS

Defendant and Counterclaim Plaintiff, RentRange, by and through its counsel, **MOYE WHITE LLP**, states the following counterclaims:

## PARTIES

1.     RentRange is a Colorado limited liability company with its principal place of business located at 8703 Yates Dr., Suite 200, Westminster, Colorado 80031.

2.     Defendant Eric Taylor is a minority member and former president of RentRange, LLC and a resident of Lexington, South Carolina.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because all parties are of diverse citizenship and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

4.     This Court has personal jurisdiction over Mr. Taylor.

5.     Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to these counterclaims occurred in this District.

**FACTS**

**Mr. Taylor's Employment Relationship with RentRange**

6.      RentRange is the nation's leading provider of residential rental market intelligence to the financial services and real estate industries.  RentRange's business operations include software implementation, software development and data services processing and delivery.

7.      In 2011 Mr. Taylor began working for RentRange as an independent contractor.

8.      Mr. Taylor agreed to serve as RentRange's President.

9.      In his capacity as President of RentRange, Mr. Taylor had significant and substantial responsibilities related to the business operations of the company and, as a result, was entrusted with information necessary for him to carry out said position.

10.     On March 23, 2012, Mr. Taylor signed an employment agreement with RentRange dated October 16, 2013 ("Employment Agreement"), that provided him a $240,000 base salary plus other benefits.

11.     Paragraph 6 of the Employment Agreement required Mr. Taylor to devote at least forty hours a week of his "business time and attention solely to [RentRange's] business and interests."

12.     Paragraph 10 of the Employment Agreement restricted Mr. Taylor, during his employment and for two years following his termination of employment, from soliciting RentRange's customers or causing or attempting to cause, such customers to decrease or cease doing business with RentRange or from assisting any other person or entity in doing so.

13.     By signing the Agreement, Mr. Taylor also agreed not to divulge, appropriate or use any "Confidential Information" for a period of two years.

14.     The Employment Agreement defines Confidential Information as: computer programs and software, business plans, company policies, personnel information, customer lists, general business tactics and strategies, discoveries, concepts, designs, drawings, specifications, techniques, research and development strategies, scientific data, technological data, pending projects and proposals, development, records files and other information related to customers of RentRange, cost date, pricing and financial information.

15.     The Employment Agreement further provides that such Confidential Information and "inventions" are the exclusive property of RentRange.

16.     Paragraph 9(b) of the Employment Agreement requires Mr. Taylor to return originals, copies and all materials containing RentRange's Confidential Information, upon termination of employment.  Paragraph 11 similarly required "at any time" upon RentRange's request (or his termination of employment) that Taylor return (retaining no copies or notes) all documents relating to RentRange's business including correspondence, computer files, computer disks and all tangible property belonging to Employer.

17.     Paragraph 11 of the Employment Agreement provides for an award of attorneys' fees incurred to enforce the provisions of the agreement or in connection with a party's breach of the agreement.

18.     Mr. Taylor's relationship with RentRange was further governed by RentRange's Employee Handbook ("Handbook") which, among other things, contained

24

its "Guidelines for Appropriate Conduct," a provision restricting Mr. Taylor from working with a competing business during his employment with RentRange.

19.     Mr. Taylor agreed not to, without RentRange's prior written consent, solicit RentRange customers or cause its customers to decrease or refrain from doing business with RentRange.

**Mr. Taylor Diverts Business Away from RentRange through an Agreement with RentRange's Competitor.**

20.     Upon information and belief, Mr. Taylor is the sole member and President of Real Property Decisions, LLC ("RPD").

21.     On December 7, 2011, Real Property Decisions, LLC entered into an agreement with Electronic Appraisal Solutions, Inc., d/b/a Valligent (the "Valligent Agreement").

22.     Valligent provides property valuations for lenders and is a competitor of RentRange.

23.     Under the Valligent Agreement, Mr. Taylor solicited RentRange clients through emails (among other means) to Valligent's principal, Jeremy McCarthy, requesting that they engage with Valligent.  In doing so, Mr. Taylor deprived RentRange of the opportunity to sell its products to customers, including Primarq, Peak KC, Freddie Mac and KPMG and Realty Pilot.

24.     Mr. Taylor also offered substantial unauthorized discounts on RentRange products/services.

25.     For example, Mr. Taylor offered Valligent the opportunity to purchase a reseller agreement from RentRange at a 95% discount (the "Valligent Resale Agreement").

26.     Upon information and belief, Mr. Taylor forged Mr. Charnoff's name on the Valligent Resale Agreement because he knew RentRange would not enter into such an agreement with a competitor.

27.     The Valligent Resale Agreement allowed Valligent to sell RentRange's product to Valligent's customers for Valligent's benefit.   RentRange, by contrast, received no benefit from Mr. Taylor's sale of the bundled products for Valligent.

28.     Mr. Taylor utilized the Valligent Resale Agreement to offer Valligent customers a single bundled package that included Valligent's valuation as well as RentRange's valuation product.  Mr. Taylor sold these bundled products on behalf of Valligent and received commissions from Valligent without approval from RentRange and at the expense of RentRange business opportunities.

29.     Mr. Taylor's sale of the bundled products for Valligent deprived RentRange of substantial profits, conflicted with his obligations under the Employment Agreement and breached his duty of loyalty to RentRange.

### Mr. Taylor's Contemporaneous Work with Weather Analytics.

30.     On or about April 8, 2013, while still employed by RentRange, Mr. Taylor secretly entered a consulting agreement with a company known as Weather Analytics (the "Weather Analytics Agreement").

31.     Mr. Taylor did not disclose or seek consent from RentRange to enter into the Weather Analytics Agreement.

32.     Mr. Taylor's work for Weather Analytics conflicted with his duties and obligations as President of RentRange.

33.     While employed as RentRange's President, Mr. Taylor devoted substantial attention to his relationship with Weather Analytics, and by doing so, shirked in his responsibilities and obligations to RentRange.

34.     Mr. Taylor conducted his work for Weather Analytics during business hours and did not use his personal time off or vacation time to conduct his work for Weather Analytics.  Thus, he failed to devote 40 hours a week to RentRange as required by the Employment Agreement.

35.     Mr. Taylor also sought and obtained reimbursement from RentRange for numerous expenses, including travel expenses, which Mr. Taylor actually conducted for the benefit of himself or other entities, not RentRange.

36.     Mr. Taylor also provided RentRange's intellectual property to Weather Analytics, property defined as "inventions" under his Employment Agreement.

**Mr. Taylor's Additional Disloyal Conduct and Breaches of
the Employment Agreement.**

37.     During his term as President of RentRange, Mr. Taylor diverted additional business opportunities from RentRange through agreements with other competitors of RentRange.

38.     For example, on May 30, 2013, Mr. Taylor emailed Huguo Delgado at Primarq to provide valuation reports from Altos Research, a RentRange competitor, for the purpose of  soliciting Primarq on behalf of Valligent.

39.     Notably, Mr. Taylor recognized his restrictions from dealing with RentRange competitors in an email to Mr. Delgado, stating:

> I am kind of stuck between a rock and a hard place on this as those four companies are considered "competitors" of mine in my new venture (RentRange & RentRange Analytics).   Unfortunately, I am now prohibited from any direct contact with them.  Six months ago I actually had no limitations at all, but that has since changed.  Been trying to navigate around the language in my employment contract for the last week or so, but am having no luck at all.

40.     Additionally, and without authorization, Mr. Taylor offered RentRange products, without charge, to conduct product comparisons in efforts to sell Valligent's products to RentRange's clients.

41.     Mr. Taylor also improperly provided RentRange's Confidential Information to RentRange's competitors.

42.     For example, on January 12, 2012, Mr. Taylor emailed Mr. McCarty (Valligent) RentRange's confidential test results and confidential information regarding RentRange's contract with Freddie Mac.   This information gave Valligent an unfair competitive advantage in seeking Freddie Mac's business.

43.     Additionally, Mr. Taylor apparently provided to Valligent RentRange's confidential password and login information because Valligent's founder requested that Mr. Taylor "resend" login information on February 15, 2013.

44.     On September 16, 2013, Mr. Taylor emailed confidential and proprietary RentRange information to Lee Howlett of ISGN, a RentRange competitor, asking the recipient to "please keep confidential."

45.     Mr. Taylor improperly sent Confidential Information including RentRange's product descriptions, information, underling methodology, data schemes, data dictionary and data output descriptions to RentRange's competitors including ISGN, and Altos Research, Valligent, e2value and his own personal email.

46.     Mr. Taylor was not authorized to disclose this information to anyone outside of RentRange and had no legitimate RentRange business purpose in doing so.

47.     On May 27, 2013, Mr. Taylor emailed other confidential RentRange documents, including a confidential member list, to his personal Gmail account, in violation of the Employment Agreement's confidentiality provisions.

48.     Previously, on August 24, 2012, Mr. Taylor improperly emailed RentRange's initial member list to his wife, Susan Taylor.

49.     Mr. Taylor provided confidential information to Bill Pardue of Weather Analytics including RentRange's financial status, earnings, market share, marketing plans, business and pricing models and estimated value, without authorization.

50.     Mr. Taylor also hired a competitor, Danny Mancino, to sell for RentRange, forging Mr. Charnoff's signature on an Agreement, and, in doing so, improperly disclosed RentRange's procedures and confidential product information to Mr. Mancino.

**Mr. Taylor's Departure from RentRange.**

51.     Upon information and belief, Mr. Taylor began preparations to leave RentRange on or before April of 2013.

52.     On October 29, 2013, only weeks after receiving a written agreement memorializing his equity interest in RentRange, Mr. Taylor informed Mr. Charnoff of his intention to resign, indicating that his employment would end by December 5, 2013.

53.     In a December 2013 meeting of RentRange's members without Mr. Taylor, the members expressed their dissatisfaction with Mr. Taylor taking an equity interest in the company while attempting to leave within eight months and the negative impact his departure could have on the company.

54.     At RentRange's request, Mr. Taylor agreed to continue his employment at RentRange to accommodate a smooth transition and so he could provide certain RentRange data and Confidential Information controlled and exclusively possessed by Mr. Taylor.

55.     Mr. Taylor never provided the requested RentRange data.

56.     After December of 2013, Mr. Taylor requested a $40,000 bonus in connection with Freddie Mac.

57.     Mr. Charnoff reminded Mr. Taylor that he had accepted $60,000 in additional compensation, memorialized in a May 1, 2013 addendum to the Employment Agreement, in lieu of any $40,000 bonus.

58.     On February 9, 2014, Mr. Taylor emailed Mr. Charnoff proposed separation terms.

59.     Mr. Charnoff was initially agreeable to many of Mr. Taylor's proposed terms, but informed Mr. Taylor that he would need to seek approval from other RentRange members.

60.     Mr. Taylor and Mr. Charnoff agreed to meet at a hotel in Orlando, Florida to discuss resolution of Mr. Taylor's departure from the company.

61.     At the February 12, 2014 meeting, Mr. Charnoff requested that Mr. Taylor return all company information and they discussed the separation terms previously emailed by Mr. Taylor.  Mr. Taylor would not return the information.

**Mr. Taylor's Refusal to Return Company Property.**

62.     Because it was crucial to obtain RentRange's property and because of Mr. Taylor's (a gun enthusiast) previous erratic behavior when asked to return the same, Mr. Charnoff engaged a professional security representative to accompany him to a meeting the following morning, on February 13, 2014.

63.     Mr. Charnoff, Mr. Taylor and the security guard met in the Orlando hotel lobby and Mr. Charnoff requested that Mr. Taylor return the company laptop.

64.     Mr. Taylor's laptop contained substantial company intellectual property and other confidential information much of which was not available to Mr. Charnoff or any other RentRange employee from any other source.

65.     Mr. Taylor refused to return the laptop, claiming that personal information, including tax returns, were contained on the company laptop.

66.     Mr. Charnoff informed Mr. Taylor that the Employee Handbook prohibited Mr. Taylor from keeping personal information on the company computer and required him to provide such information upon request.

67.     Although it was company property, Mr. Charnoff offered to give the company laptop back to Mr. Taylor after RentRange had the opportunity to retrieve and remove the Confidential Information.

68.     Mr. Taylor nevertheless became irate and asked if he was being terminated.

69.     Mr. Charnoff responded that he was not terminating Mr. Taylor but RentRange needed to back-up the laptop to ensure that it had the information that Mr. Charnoff had been requesting for a substantial amount of time.

70.     In response, Mr. Taylor violently swung the computer around in the air and told Mr. Charnoff that he would "smash the damn thing" and "kill the company."

71.     Mr. Charnoff did not forcibly take the laptop from Mr. Taylor or otherwise use force against Mr. Taylor.

72.     Mr. Charnoff's security guard sought assistance from the hotel desk staff and called the police because of Mr. Taylor's refusal to relinquish the company property.

73.     Mr. Taylor again asked if he was being terminated.

74.     Mr. Charnoff told Mr. Taylor that he simply needed to secure the company information on the laptop and he would be forced to suspend Mr. Taylor if he refused to allow Mr. Charnoff to back-up the company information on the laptop.

75.     Mr. Taylor told Mr. Charnoff "go f**** yourself, I quit."

76.     Law enforcement officers arrived at the hotel but did not detain or charge any party, as they characterized the matter as a civil dispute.

77.     Unbeknownst to Mr. Charnoff, the security guard was armed.

78.     At no time did the security guard use or display his weapon nor did he threaten force against Mr. Taylor.

79.     After Mr. Taylor quit, he left with the laptop.

**Mr. Taylor's Destruction of Valuable and Confidential Company Information.**

80.     When Mr. Taylor finally returned the laptop to RentRange, a massive amount of confidential data and information had been deleted, including, without limitation, contact information, prospect lists, emails and calendar events -- information not otherwise available to RentRange.

81.     In violation of the Employment Agreement, Mr. Taylor copied (and improperly retained) RentRange's intellectual property and confidential information by emailing confidential and proprietary information to himself and his wife before returning the laptop.

82.     As a result of Mr. Taylor's destruction of company property, RentRange was required to engage computer forensic analysts to recover the data and information forcing RentRange to expend thousands of unnecessary dollars.

83.     The forensic analysis confirms that Mr. Taylor deleted a massive amount of RentRange information just prior to terminating his employment with RentRange.

84.     The recovered information also includes numerous emails, which confirm Mr. Taylor's improper relationships with RentRange's competitors and business opportunities he diverted to others while President of RentRange.

85.     By deleting Microsoft exchange files, Mr. Taylor improperly interfered with RentRange's ability to service its clients and pursue prospect opportunities.

86.     Mr. Taylor's attempted destruction of company property/information resulted in delays and lost business opportunities for RentRange while RentRange attempted to re-create the information.

87.     Moreover, Mr. Taylor's retention of information also allows him an unfair and improper advantage in competing with RentRange, through his own company, RPD.

88.     Additionally, Mr. Taylor persists in his refusal to turn over other property, including the cellular telephone and telephone number used to conduct RentRange business, which further deprived RentRange from conducting company business.

## COUNTERCLAIMS FOR RELIEF

### FIRST COUNTERCLAIM FOR RELIEF
### (Breach of Employment Agreement)

1.     RentRange incorporates its previous allegations as if set forth herein.

2.     The Employment Agreement is a valid and binding contract between the parties.

3.     RentRange performed all of its obligations under the Employment Agreement.

4.     Mr. Taylor breached the Employment Agreement by, among other things, failing to honor its confidentiality provisions, failing to return company property upon termination, providing intellectual property and/or "inventions" to third parties, and soliciting RentRange customers on behalf of competing businesses.

5.      Mr. Taylor also breached the Employment Agreement by failing to devote his efforts and loyalties to RentRange and by failing to work at least forty hours per week for RentRange during his period of employment.

6.      As a result of Mr. Taylor's breaches of the Employment Agreement, RentRange has suffered damages in amount to be determined at trial, including its reasonable attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

7.      RentRange incorporates all previous paragraphs.

8.      Mr. Taylor, as a member and officer of RentRange, owed fiduciary duties to RentRange and its members, including, without limitation, a duty of loyalty.

9.      Mr. Taylor breached his fiduciary duties to RentRange and its members by, at least:   engaging in self-dealing conduct to RentRange's detriment; diverting business and business opportunities from RentRange; entering into agreements with RentRange's competitors; providing RentRange products and/or services to competitors and others without fair compensation; providing RentRange's confidential and proprietary information to RentRange's competitors and others; seeking, obtaining and keeping reimbursements from RentRange for expenses not attributable to RentRange business; failing to disclose material information concerning his relationships with competitors to RentRange; failing to provide information to RentRange in an effort to prevent it from performing its business; conducting business for other companies while being paid by RentRange; and deleting and attempting to permanently destroy valuable RentRange property and information.

10.     As a result of Mr. Taylor's breaches of his fiduciary duties, RentRange has been damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Conversion)

11.     RentRange incorporates its previous allegations.

12.     Through the Employment Agreement, Mr. Taylor agreed that Confidential Information and "inventions" are the exclusive property of RentRange and that he would not use or disclose the same to any third-party.

13.     Mr. Taylor further agreed that he would return RentRange's Confidential Information and property to RentRange upon termination of his employment.

14.     Upon termination of his employment, Mr. Taylor has failed and refused to return RentRange Confidential Information and property, and has disclosed and provided the same to third-parties.

15.     Mr. Taylor has no right to exercise control or possession over RentRange's Confidential Information or property and has converted it for his own use.

16.     As a result of Mr. Taylor's conversion of RentRange's Confidential Information, RentRange has been damaged in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (Intentional Interference with Prospective Contractual Relations)

17.     RentRange incorporates its previous allegations.

18.     Mr. Taylor intentionally and improperly interfered with RentRange's contractual relations with prospective customers.

19.     Specifically, Mr. Taylor, through his relationship with Valligent and the related Valligent Resale Agreement, sold RentRange's valuation product in combination with Valligent's products to earn a commission from Valligent.

20.     RentRange lost valuable contracts or opportunities with each customer that purchased RentRange's product through Valligent.

21.     Mr. Taylor's conduct was intentional and improper and prevented the formation of a profitable contract between RentRange and prospective customers that purchased bundled products through Valligent.

22.     Mr. Taylor's conduct resulted in losses to RentRange while he received commissions from Valligent.

### FIFTH CLAIM FOR RELIEF
### (Civil Theft)

23.     RentRange incorporates its previous allegations.

24.     Mr. Taylor knowingly retained RentRange property, including Confidential Information, after he was required to return all such property upon termination of his employment.

25.     Mr. Taylor also expended RentRange funds to conduct business on behalf of RPD and others, including (but not limited to) expense reimbursements, travel expenses, and rent.

26.     Through his actions, Mr. Taylor intended to deprive, and has deprived, RentRange of the use and benefit of its property, including Confidential Information and property without RentRange's authorization.

27.     RentRange is entitled to recover three times the amount of the actual damages it has sustained as a result of Mr. Taylor's theft, to be proven at trial, as well as costs and reasonable attorneys' fees pursuant to C.R.S. § 18-4-405.

## SIXTH CLAIM FOR RELIEF
### (Theft of Trade Secrets)

28.     RentRange incorporates its previous allegations.

29.     Mr. Taylor knowingly obtained and retained the value of RentRange's Confidential Information, including customer lists, pricing information, intellectual property and other customer information and records for Mr. Taylor's use and benefit.

30.     RentRange's Confidential Information constitutes trade secrets under C.R.S. § 7-74-101 *et seq.*

31.     In doing so, Mr. Taylor knowingly obtained and exercised control over a thing of value of another without authorization and by threat or deception, with the intent to permanently deprive RentRange of the exclusive use or benefit of its trade secrets.

32.     Mr. Taylor's actions were pursued under false pretenses.

33.     Mr. Taylor has damaged RentRange in an amount to be determined at trial including actual damages, unjust enrichment and other relief permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, RentRange, LLC. requests that the Court enter judgment in its favor and against Plaintiff as follows:

A.      Damages in an amount to be proven at trial;

C.      Pre- and post-judgment interest;

D.      Attorneys' fees, treble damages and costs pursuant to the parties' agreements, the civil theft statute, and applicable law; and

E.      Any such other and further relief as the Court deems just and proper.

Dated:  July 8, 2014.

Respectfully submitted,

**MOYE WHITE LLP**

By:*/s/ Elizabeth H. Getches*
       Elizabeth H. Getches (#34898)
       Christopher T. Leach (#34865)
       16 Market Square, 6th Floor
       1400 16th Street
       Denver Colorado 80202-1486
       Telephone:  (303) 292-2900
       Facsimile:  (303) 292-4510
       Email:liza.getches@moyewhite.com
       Email:chris.leach@moyewhite.com

*Attorneys for Defendants/Counter-Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following persons at the below addresses:

Liz Brodzinski
Charles Lee Mudd Jr.
Mudd Law Offices
3114 West Irving Park Road, Suite 1W
Chicago, IL 60618
clm@muddlaw.com
lb@muddlaw.com

*s/ Deanna S. Colvin*